Sosman, J.
Plaintiffs Eugene Novak and Christine Florio brought the present action complaining of the decision of the Department of Environmental Protection (DEP) to reinstate the previously dismissed appeal of an Order of Conditions granted to the plaintiffs by the Conservation Commission of Newbury. DEP moved to dismiss for failure to exhaust administrative remedies. On September 1, 1995, this court denied DEP’s motion to dismiss, holding that DEP’s assertion of jurisdiction over the matter was based on an error of law, unsupported by substantial evidence, arbitrary, capricious and an abuse of discretion [4 Mass. L. Rptr. No. 21, 452 (January 15, 1996) * ]. As the exhaustion issue overlapped with the underlying merits of whether DEP could assert jurisdiction over the Novak project, the court ordered that judgment be entered in favor of plaintiffs and ordered DEP to dismiss the appeal and vacate any order(s) that the agency had already issued as part of that appeal.
DEP filed a motion to reconsider, indicating that there were additional arguments on the merits that had not been included in its motion to dismiss. The court allowed the motion to reconsider and allowed DEP to fully brief the issue of whether the agency’s assertion of jurisdiction over the project was wrongful.[1] On reconsideration, the court again finds that plaintiffs are entitled to judgment in their favor declaring that the actions of DEP in continuing to process the appeal of the Novak/Florio project are beyond DEP’s authority.
Background
In April 1993, Novak and Florio sought approval from the Conservation Commission of Newbury to construct a single-family dwelling at 58 Northern Boulevard on Plum Island. As the project potentially affected a protected wetland resource, Novak and Florio needed to obtain an Order of Conditions from the Conservation Commission in order to proceed with the project. G.L.c. 131, §40. On July 27, 1993, the Conservation Commission issued an Order of Conditions, which allowed Novak and Florio to proceed with the construction of their house with certain specified conditions.
DEP has the authority, on its own initiative, to review the issuance of any Order of Conditions. Id; 310 CMR §10.05(7)(j). DEP took no such action, thus signifying (albeit passively) that it was satisfied that the Order of Conditions as issued by the Conservation Commission met DEP’s standards.
Edwin Furman, a neighbor who claimed that .the Novak/Florio project would adversely affect the dunes and expose his own beachfront property to storm damage, filed a Request for Superseding Order of Conditions with DEP on or about July 31, 1993. DEP regulations require that anyone seeking such review by DEP must send the applicant a copy of the Request (either by certified mail or by hand delivery) within ten days of the issuance of the Order of Conditions. 310 CMR§10.05(7)(d). This requirement is also spelled out on the Conservation Commission form issuing the Order of Conditions. Furman did not deliver or send a copy of his Request to Novak and Florio as required, nor did he give them any other form of notice that he had sought DEP review of their project. Since 1988, *269 DEP has had a written policy (Wetlands Protection Program Policy 88-4) under which failure to serve the applicant within the required time results in dismissal of the Request for Superseding Order. The reason for Policy 88-4 was explained as follows:
At times, DEQE’s Regional Offices receive Requests for Superseding Orders of Conditions or Superseding Determinations of Applicability which contain no proof of service ... Of particular concern to the Department is the lack of notice to the applicant who, under 310 CMR 10.05(7)(k), may properly rely on the closure of the ten-day regulatory appeal period as a signal to begin work in accordance with the Order of Conditions.
Confusion results when Requests for the Departmental action are filed, no notice is given to the applicant, and the applicant, in reliance on the finality of the Order of Conditions, goes forward. Heretofore, the Department’s Legal Office required a showing of harm on the applicant’s part before dismissing an appeal filed without the proper notice. When requested, this showing of prejudice has been uniformly provided by applicants.
Accordingly, Policy 88-4 went on to provide:
The Legal Office will now presume that applicants have been prejudiced by the lack of notice. Requests for Superseding Orders or Superseding Determinations filed with the Regional Offices, and Requests for Adjudicatoiy Hearings filed with the Legal Office, submitted without proper service to the applicant, will now be dismissed for this procedural violation.
By statute and by regulation, DEP is to issue its Superseding Order, if any, within 70 days after the Request for Superseding Order is filed. G.L.c. 131, §40; 310 CMR§10.05(7)(f). As of 70 days after the filing of Furman’s Request, Novak and Florio had still not been notified of the filing of Furman’s Request for Superseding Order.
In late November 1993, almost four months after Furman’s Request had been filed, Michael Turgeon of DEP’s Regional Office contacted the attorney for Novak and Florio by telephone and asked him if Novak and Florio had ever received any notice of a Request for Superseding Order of Conditions on their project. Turgeon was advised that the applicants had not been served with or notified of any such Request. This telephone inquiry in late November 1993 was the first time Novak and Florio had heard that a Request for review of their project had been filed with DEP.
In that same telephone conversation, Turgeon went on to explain DEP’s policy to dismiss any Request that had not been timely served on the applicant. Thus, simultaneous with the first notice to Novak/Florio of the filing of Furman’s Request for DEP review of their project came the information that Furman’s Request would be dismissed for lack of timely service.
On January 11, 1994, DEP sent a letter to Furman, with a copy to Novak and Florio. That letter advised Furman that DEP had learned of his failure to serve the applicants in accordance with the regulations. It then went on to explain the consequences of failure to make timely service: “Unless it can be proven that a copy of your request was sent to the Department and the Applicant by certified mail within 10 business days of the issuance of the Order of Conditions the Department must dismiss your appeal.” Furman was given until February 1, 1994 to “provide the Department with proof that your appeal was received by the Applicant within the timeframes described above.” In the absence of a response by February 1, “this letter will serve as notification that your appeal has been dismissed.”
On January 13, 1994, Furman wrote to DEP, with a copy to Novak and Florio. In that letter, Furman conceded that he had not sent the applicants any copy of his Request for Superseding Order. He contended, however, that he had not done so because DEP had failed to explain the requirement to him. Arguing that the failure to effect service was “not through negligence or neglect on my part but through a lack of explanation by the Department of Environmental Protection,” Furman asked that his Request for Superseding Order be reopened. He also enclosed with his letter a $100 check for the adjudicatory appeal filing fee.
On March 16, 1994, Mr. Turgeon of the DEP again contacted Novak and Florio’s attorney, advising him that there was not yet any resolution of Furman’s January 13, 1994 request for an adjudicatoiy hearing and that, until there was a resolution, Novak and Florio were to cease work on the project. On March 22, 1994, DEP sent Novak and Florio a letter confirming in writing that they were to stop work on the project pending resolution of Furman’s request for hearing. This contact from DEP in March 1994 was the first time Novak and Florio had been told that Furman’s appeal was still open and the first time they had been told that, due to his open appeal, they could not proceed with work on their house.[2]
On March 24, 1994, Novak and Florio filed an emergency motion to dismiss Furman’s appeal. Fur-man opposed the motion. For reasons that are not discernible from this record, DEP itself filed a brief and affidavit in opposition to the motion, reversing its own position and arguing to the Administrative Law Judge (ALJ) that its dismissal of Furman’s appeal had been erroneous. The parties presented the ALJ with the record of prior proceedings, plus affidavits from Florio, the attorney for Novak and Florio, Turgeon, and Fur-man. The ALJ decided the matter based on the record and affidavits. There was no evidentiary hearing.
On October 21, 1994, the ALJ issued a Final Decision denying the Novak/Florio emergency motion to dismiss Furman’s appeal, vacating the dismissal of Furman’s Request for Superseding Order, and re *270 manding the matter to DEP to proceed with processing Furman’s Request for Superseding Order. With regard to the lack of timely service, the ALJ noted both the requirement for timely service and DEP’s longstanding policy of dismissing Requests that were not timely served on the applicant. However, the ALJ also noted that the presumption that an applicant has been prejudiced by lack of timely service is a rebuttable presumption. Where there is “evidence demonstrating affirmatively that lack of timely service has not prejudiced the applicant,” the presumption of prejudice is successfully rebutted.
The ALJ then recited as “uncontradicted facts” that Florio had applied for a town septic system construction permit in September 1993, prior to any notice that Furman had filed an appeal. Florio had also entered into a contract with a structural engineer in the fall of 1993. At unspecified times, Florio had also contracted with an architect, and applied for and obtained other permits relating to the project. Actual construction at the site did not commence until February of 1994. While acknowledging that the application for septic system permit had been filed prior to the telephone call that first alerted Novak and Florio to the filing of Furman’s Request for Superseding Order, the ALJ concluded that the other actions taken by Novak and Florio in reliance on the finality of the Order of Conditions “occurred approximately at, and after, they first received constructive notice” of the pendency of Furman’s Request.
From this chronology of events, the ALJ concluded that the evidence “shows affirmatively that the applicants were not prejudiced by the petitioner’s failure to serve a copy of his Superseding Order request upon them” because “the applicants did veiy little with their Order of Conditions at least until they received constructive notice of the Superseding Order request, and for the most part not until after the Superseding Order request had mushroomed into a full-blown adjudicatory appeal.” The ALJ then concluded that the presumption of prejudice had been rebutted.
The ALJ also rejected the applicants’ argument that the DEP’s failure to issue a Superseding Order within 70 days (as required by G.L.c. 131, §40) deprived the agency of jurisdiction to consider Furman’s Request,[3] and rejected their argument that Furman lacked standing. The ALJ’s decision was adopted by the Acting Commissioner. Accordingly, the previous dismissal of Furman’s Request for Superseding order was vacated and his Request was reinstated for further processing on the merits.[4]
Plaintiffs filed the present action on November 9, 1994, contending that DEP’s assertion of jurisdiction over their project was wrongful.
Discussion
DEP’s assertion of jurisdiction over this project by way of reinstating Furman’s previously dismissed Request for Superseding Order is based on an error of law, unsupported by substantial evidence, arbitraiy, capricious, and an abuse of discretion. Under long established agency policy, as promulgated in writing and as followed in all other cases,[5] failure to serve an applicant with a Request for Superseding Order within ten days of the issuance of the Order (as required by 310 CMR 10.05(7)(d)) results in dismissal of the Request. Where the applicant has not been served -in a timely fashion, there is a presumption that the applicant has been prejudiced by that delay. That presumption was adopted in light of the agency’s experience that, when called upon to demonstrate prejudice from lack of timely service, eveiy applicant had been able to do so.
Although the written policy itself states that such Requests “will be dismissed” because the applicant is presumed prejudiced (making no mention of any opportunity to rebut that presumption), the agency treats the presumption of prejudice as a rebuttable presumption.[6] Under that practice, there must be “evidence demonstrating affirmatively that lack of timely service has not prejudiced the applicant.” Final Decision, p.9. “(UJnless the appealing party can affirmatively demonstrate that lack of timely service has not prejudiced the applicant in any way, an untimely served wetlands appeal will be dismissed.” Matter of Palmisano, 11 MELR 1473 (1993). Thus, Novak and Florio’s position in Furman’s administrative appeal of the dismissal of his Request should have been that they were presumed prejudiced that they were under no obligation to provide any further evidence of prejudice, and that the burden was on Furman to produce evidence that they were not prejudiced “in any way” by the delay in service.
Beyond the presumption to which Novak and Florio were entitled, the undisputed chronology of events showed that they had relied on the unappealed Order of Conditions at least to the extent of proceeding with their application for a septic permit (including payment of the application fee for that permit) long before receiving any form of notice of Furman’s Request for Superseding Order. The ALJ treated this act in reliance on the finality of the Order of Conditions as only a “little” reliance, and then concluded that Novak and Florio were “not prejudiced.” The irrationality of that conclusion is palpable. If one is presumed prejudiced, and one has further shown at least a “little" actual prejudice, the fact that the prejudice actually shown is only a “little” prejudice does not affirmatively demonstrate that there was “no” prejudice. In other words, rather than giving Novak and Florio the benefit of the presumption to which they were entitled, the ALJ’s analysis effectively required them both to demonstrate prejudice and to meet some unannounced standard of magnitude of that prejudice.
Furthermore, additional steps of the project were taken by Novak and Florio in the fall of 1993, with the record unclear which of those steps came before and *271 which came after the late November telephone notice from DEP notifying them of Furman’s appeal.[7] To affirmatively show that there was “no” prejudice from the delayed notice, one would have to show affirmatively that the additional steps taken by Novak and Florio in the fall of 1993 came after the telephone notice from DEP. If the record is inconclusive as to whether those steps were taken shortly before or shortly after the call, the record has not established "affirmatively” that they were not taken in reliance on the finality of the presumably unappealed Order of Conditions. Again, the ALJ’s analysis does not reflect a proper application of the principles of a rebuttable presumption.
The ALJ also attempted to bolster his conclusion that there was “no” prejudice by pointing to the fact that Novak and Florio continued to take steps towards completion of the project after receiving the phone call from DEP in late November 1993. Of course, nothing in Novak and Florio’s conduct after that phone call from DEP changes the fact that they are presumed prejudiced by the lack of service or the fact that they showed some actual prejudice occurring prior to that call. Furthermore, the ALJ’s assessment of Novak and Florio’s conduct after the November 1993 telephone call from DEP ignores the fact that that same phone call simultaneously advised them that DEP would not entertain the Request because of its untimely service on the applicants. This advice, a completely accurate recitation of the agency’s written policy on the subject, did not in any sense convey to Novak and Florio that they should cease work. To the contrary, it assured them, quite accurately, that Furman’s Request would be dismissed.[8] Thus, while the ALJ was apparently offended by the fact that Novak and Florio continued with the project after “constructive notice” of the filing of Furman’s Request, there should be no such offense taken, as they simultaneously received “constructive notice” that the Request would be dismissed.[9]
Plaintiffs have also demonstrated that DEP’s refusal to give them the benefit of the presumption of prejudice is inconsistent with the agency’s treatment of this same issue in other cases. While commencement of actual construction prior to receiving notice of any appeal would obviously be one form of “prejudice" flowing from the delayed notice, DEP has treated other types of reliance on the apparent finality of a decision — including very minimal reliance — as sufficient “prejudice” to justify dismissal of a wetlands appeal. In Matter of KBK Design & Development, 5 MELR 1517 (1987), there was a five month delay in notifying the applicant that an opponent of her project had appealed. The applicant had not commenced construction prior to receiving notice of the appeal, but had incurred some (unspecified) costs for preparation of plans, engineering studies, and legal and recording fees.[10] Despite the fact that no construction had commenced, DEP dismissed the appeal. Similarly, in Matter of Del Prate, 4 MELR 1007 (1986), there was approximately three weeks’ delay in notifying the applicant of an appeal. During that time, the applicant had accepted an offer to purchase the lot in question, but had not yet signed any purchase and sale agreement. Upon learning of the appeal, the applicants made a “business decision” to substitute another lot at the same price (rather than rescind the deal that was not yet binding) and claimed that that substitution had caused them to lose money. Although dismissal of the appeal would not cure the alleged prejudice, the fact that applicants had taken any action, even an action that was still revocable, was sufficient prejudice to justify dismissal.
In the most stark contrast to the prejudice at issue in this case is Matter of Massachusetts Bay Transportation Authority, DEP Docket No. 94-084 (December 23, 1994). In that case, the MBTA received constructive notice of the filing of an appeal of a wetlands variance within one to two days of the time it should have been formally served with the opponent’s appeal request. No construction had commenced, and no contract had been entered into. All that had happened in that one to two days time was that the MBTA had issued a notice of contract award and had begun “preparing the contract for execution.” In other words, the mere announcement of the winning bidder and the commencement of preparation of contract documents was sufficient to convince the ALJ that the MBTA had been prejudiced by a two day delay in receipt of notice.[11]
In the present case, there was several months delay in constructive notice to the applicants, not just a few days (as in MBTA) or a few weeks (as in Del Prate).[12] These applicants had not only begun preparing some contract documents for their work, but had actually engaged one such contractor (the septic system engineer) and, with the help of that contractor, had filed for a septic construction permit. A structural engineer had also been hired in the fall of 1993, with the record indicating that that contractual obligation may also have been incurred prior to constructive notice of the pendency of the appeal. In the court’s view, the analysis of what constitutes “prejudice” set forth in the MBTA, Del Prate and KBK Design decisions can not be reconciled with the ALJ’s refusal to find “prejudice” on the facts of the present case.
Indeed, the MBTA decision itself notes that there are only two cases (including the present case) where the applicant has been found to be not prejudiced as a result of delay in receipt of an appeal notice. In that one other case, Matter of Loring, 10 MELR 1147 (1992), there had been a delay of only four or five days in getting notice to the applicant. The applicant did not dispute that he had done nothing in reliance on the finality of the decision during those four to five days. That appeal was allowed to go forward, despite that minor delay in notice.
*272 Novak and Florio thus stand alone as the only-applicants who have shown some degree of reliance on the finality of a wetlands order but have been found to have not suffered any prejudice. DEP’s experience prior to adopting Policy 88-4 was that delay in notice had invariably harmed the applicant. Experience since the adoption of Policy has been the same, with all late served appeals being dismissed except for Loring and the present case. Nowhere does that history suggest that the prejudice necessary to justify dismissing an appeal needs to reach any particular dollar magnitude, and, as discussed above, relatively minor prejudice has sufficed in other cases. Inconsistent application of what is supposed to be the same standard is persuasive evidence that the agency is acting arbitrarily and capriciously and abusing its discretion.
If, as DEP now apparently believes, construction of the Novak house will threaten the environment of Plum Island, it is regrettable that neither DEP nor Furman completed the steps necessary to a review of that project within the time frames allowed. When it had the opportunity to review the Conservation Commission’s approval of the project, DEP declined to do so. When Furman filed his Request for Superseding Order, he failed to inform Novak and Florio for a period of months, during which time Novak and Florio justifiably proceeded with their plans. Having belatedly changed its mind about the environmental dangers associated with this particular house, DEP may not cure its own failure to review the project by changing its procedural standards so as to revive Furman’s defective appeal. The agency’s procedural requirements must be consistently applied. They do not mean one thing for projects that DEP favors and another for projects that DEP belatedly decides to oppose.
On the facts as found by the agency, Novak and Florio were entitled to a final dismissal of Furman’s Request for Superseding Order and to a lifting of the stop work order. Accordingly, they are entitled to judgment in their favor reversing the agency’s Final Decision, ordering the dismissal of Furman’s Request for Superseding Order of Conditions, vacating any Superseding Order or other order issued by DEP based on Furman’s Request for Superseding Order, and enjoining DEP from preventing or otherwise interfering with the performance of work on plaintiffs’ property pursuant to the Order of Conditions as issued by the Newbury Conservation Commission. Finding no just reason for delay, the court will enter separate and final judgment in favor of plaintiffs with respect to those counts of their complaint seeking relief under G.L.c. 30A, §14.[13]
ORDER
For the foregoing reasons, the Department’s Final Decision of October 21, 1994 is hereby REVERSED. Finding no just reason for delay, it is hereby ORDERED that separate and final judgment in favor of plaintiffs be entered on Counts Two, Three, Four, Five and Seven as follows:
The October 21, 1994 Final Decision of the Department of Environmental Protection in the Matter of Eugene M. Novak and Christine Florio is reversed. The Department is ordered to dismiss the Request for Superseding Order of Conditions filed by Edwin J. Furman and to vacate any Superseding Order or other order based on Furman’s Request for Superseding Order. The Department is hereby enjoined from preventing or otherwise interfering with the performance of work on plaintiffs’ property pursuant to the Order of Conditions as issued by the Newbuiy Conservation Commission.

Editor’s Note: For opinions in a related matter see the immediately following opinion and 3 Mass. L. Rptr. No. 15, 321 (April 10, 1995, and 6 Mass. L. Rptr. No. 7, 134 (January 13, 1997).

The court did not allow reconsideration on the issue of whether Novak and Florio had to exhaust administrative remedies before proceeding with this action challenging DEP’s assertion of jurisdiction. For the reasons stated in the court’s Memorandum of Decision and Order on Defendant’s Motion to Dismiss (September 5, 1995), Novak and Florio are not required to further exhaust administrative remedies before seeking relief from this court.

Furman’s January 13, 1994 letter had not provided any evidence of the required service on the applicants, as no such evidence existed. Novak and Florio could reasonably assume that DEP would adhere to its own written decision that, unless Furman proved timely service, “the Department must dismiss your appeal.” There is nothing in the record to suggest that Novak and Florio were advised, prior to March 1994, that DEP had changed its mind about the propriety of dismissing Furman’s Request for Superseding Order.

As of the date of Furman’s January 13, 1994 letter requesting that his Request be re-opened and processed, some 166 days had elapsed since the original Request had been filed. In other words, the appeal itself did not even start until over three months after the time that the Superseding Order, if any, was to have issued. From the filing of that appeal until the ALJ’s decision in October 1994, another 281 days elapsed. Thus, as of October 1994, Novak and Florio found themselves at the commencement of a proceeding on Request for Superseding Order that should have been completed back in September 1993.

At oral argument on DEP’s motion to dismiss, the court was advised that DEP had since issued a Superseding Order of Conditions that effectively prohibits construction of the Novak/Florio house. Novak and Florio then had a right to an adjudicatory hearing before the agency, which they requested.

See discussion infra, pp. 11-14.

See Matter of Massachusetts Bay Transportation Authority, DEP Docket No. 94-084 (December 23, 1994); Matter of Palmisano, 11 MELR 1473 (1993); Matter of Beckert, 11 MELR 1599 (1993); Matter of Benoit, 10 MELR 1141 ( 1992); Matter of Del Prate, 4 MELR 1007 (1986); Matter of KBK Design & Development, 5 MELR 1517 (1987). The Wetlands Protection Program Policy 88-4 is a “policy,” not a regulation. Thus, what appears to be language mandating dismissal, as described in Policy 88-4, is not enforceable as a regulation. Where the agency has consistently interpreted and applied this policy as creating a rebuttable presumption, this court will adopt the same interpretation. However, the court will also hold the *273 agency to its announced interpretation of the policy and accord Novak and Florio the proper benefit of that rebuttable presumption.

The ALJ found that certain of these steps were taken “approximately at” the time of the phone call from DEP. If something occurred “approximately at” the time of that call, there is no showing, and no specific finding, that the steps the ALJ is referring to occurred after that call.

DEP argues that the ALJ did not include this aspect of the call among his findings and that the court should “not overturn those factual findings.” See School Committee of Wellesley v. Labor Relations Commission, 376 Mass. 112, 120 (1976) (“[i]t is for the agency, not the courts, to weigh the credibility of witnesses and resolve factual disputes”). The ALJ did not weigh the credibility of any witnesses, as the case was decided based solely on affidavits. Nor was there any factual dispute on this issue. There was a brief affidavit from Turgeon describing this call, and a slightly longer affidavit from the attorney that had received the call. Turgeon did not relate this part of the conversation in his veiy brief affidavit. It was included in attorney Novak’s affidavit. Turgeon’s affidavit never stated (and DEP never argued) that that additional information about dismissing Furman’s appeal had not been conveyed during the call. Where neither DEP nor Turgeon ever contested the further details in the attorney’s affidavit, where the version of the conversation as set forth in the affidavit is an accurate recitation of the substance of Policy 88-4, where the alleged conversation accurately predicted DEP’s January 1994 dismissal of Furman’s appeal for untimely service, and where the ALJ himself did not conduct any evidentiary hearing, there would be no rational basis for the ALJ to “disbelieve" the additional detail contained in one affidavit. There is nothing in the ALJ’s findings suggesting that he did not credit that aspect of attorney Novak’s affidavit. He did not specifically include it in his findings, as he apparently failed to appreciate the significance of it. Contrary to DEP’s suggestion at argument, there is no need to remand this matter for an evidentiary hearing over a detail that was never disputed below.

Formal written notice of the dismissal was conveyed to Novak and Florio in DEP’s letter of January 11, 1994. The very earliest notice that there was any possibility of further proceedings came in Furman’s letter of January 13. By January 13, there is no question that Novak and Florio had taken farther significant steps in reliance on the original Order of Conditions.

The applicant also complained that she had made payments of mortgage interest and that she would lose investors in the project if the matter had to be stayed pending the appeal. Costs or problems that would have been experienced, with or without timely notice, can not be a form of prejudice that stems from a delay in receipt of notice.

 The MBTA was not bound to the construction contract in question, as the contract documentation was still being prepared when the MBTA received word that the appeal had been filed. Mere announcement of the winning bidder did not bind the MBTA to the unexecuted contract. Other than the administrative costs associated with a day’s work reviewing contract documents, there was no irrevocable damage to the MBTA that flowed from the two days’ delay in notice. DEP argues to this court that the costs of the bidding process itself would add to the prejudice suffered. That cost had not been incurred in reliance on the finality of the variance. It had been incurred before the variance had even been obtained. It does not add to the quantum of prejudice sustained as a result of the delay in notice that an appeal of the variance had been filed.

The presumption that lack of timely service prejudices the applicant is a presumption that can only get stronger as time passes. The longer the delay before the applicant gets some notice of the pendency of an appeal, the more likely it is that the applicant has relied on the finality of the underlying agency decision. As indicated above, Novak and Florio did not receive any notice that a Request for Superseding Order was pending until long after the entire time for considering and issuing any Superseding Order had run.

 As filed, Novak and Florio’s complaint also sought monetary relief for alleged denial of due process and denial of equal protection. In light of the court’s ruling and order giving Novak and Florio relief under G.L.c. 30A, § 14, it is not clear whether they still intend to pursue those other claims. Similar constitutional claims against DEP in a related case have already been decided in favor of DEP (Novak v. Department of Environmental Protection, Worcester Superior Court, Civil Action No. 94-0775), and principles of res judicata might well bar relitigation of those claims here. In light of the excessive delays that have already been incurred before both the agency and the court, it would be inappropriate to await resolution of those other claims before granting Novak and Florio the declaratory and injunctive relief they need to proceed with the construction of their house.